IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN C. KLUGE for himself and;       )<br><br>THE PUTATIVE CLASS,       )<br><br>      Plaintiff       )<br><br>v.       )<br><br>UNITED STATES GOVERNMENT       )<br><br>Service of Process c/o U.S. Attorney for the District )<br>of Columbia 555 Fourth Street, NW, Washington )<br>D.C. 20530       )<br><br>Certified Copy to: U.S. Department of Justice, )<br>Attorney General )<br>950 Pennsylvania Avenue, NW )<br>Washington, DC 20530, )<br><br>      Defendant. )<br>      ) | Civil Action No. _____<br><br><br><br>CLASS ACTION AND<br>COMPLAINT FOR<br>DECLARATORY RELIEF |

## CLASS ACTION COMPLAINT

Plaintiff John Kluge, on behalf of himself and a class of similarly situated persons,

hereby brings this class action against Defendant the United States of America (the

"Government") and alleges the following upon personal knowledge and upon information and

belief.

This case is brought on behalf of Plaintiff and a Putative Class of U.S. military reserve

personnel who are also federal civilian employees who volunteered to serve the Nation in

wartime only to be unlawfully deprived of a differential pay benefit of employment found in 5

U.S.C. 5538 (hereinafter "Differential Pay Law").[1]  Congress passed the Differential Pay Law,

and it was signed into law, ten years ago with effective date of 28 January 2009.  Congress

intended with this Statute to provide the same employment benefits that a large number of

private sector, even state, local, and foreign, employers provide to activated reservists covering

the difference when their military pay and allowances is less than their civilian pay.

In implementing the law, the Office of Personnel Management (hereinafter "OPM")

made an unlawful, as well as an arbitrary, capricious, and possibly prejudicial, decision to deny

this benefit to civilian reservists courageous and selfless enough to volunteer for wartime duty

when the statute and the principles of statutory construction allow for no such distinction.

Worse, OPM officials actually decided the same year they implemented this law to not impose

the 'volunteer vs. conscripted' distinction when implementing the exact same language

concerning a Family and Medical Leave Act (FMLA) provision citing the exact same federal

statute that defines qualifying or covered active duty.  *See* Exhibit A, OPM and Department of

Labor FMLA Fact Sheets.  The same year Congress passed 5 U.S.C. 5538, it passed an

amendment to the FMLA citing to the exact same provision of federal law, 10 U.S.C. 101(a)(13),

for purposes of defining 'covered active duty status.'  Somehow OPM senior officials came to

opposite conclusions that same year concerning that same statutory definition.  In fact, the Merit

System Protection Board (MSPB) hearing Judge Benjamin Gutman cited this fact as a reason for

ruling against OPM on this very same underlying Differential Pay  issue in a case that was

[1] 5 U.S.C. 5538 (Section 751 of the Omnibus Appropriations Act of 2009, "NONREDUCTION IN PAY WHILE FEDERAL EMPLOYEE IS PERFORMING ACTIVE SERVICE IN THE UNIFORMED SERVICES OR NATIONAL GUARD" (Public Law 111-8, March 11, 2009) as amended by section 745 of the Consolidated Appropriations Act of 2010 (Public Law 111-117, December 16, 2009).

limited to one individual reserve member.  *See* Exhibit B at Page 5.

After a decade of various efforts to get OPM to right this blatant wrong, it is time for the Court to issue a declaratory judgment to put an end to this unlawful denial of benefits.  While there is nothing in any rule of statutory construction or legislative history that in any way justifies this arbitrary and capricious policy, it is, surprisingly, consistent with previous prejudicial public statements by federal offices involved in its formulation.  *See* Exhibit C, *Wall Street Journal* article from 2002 quoting DoD Spokesperson opposing the Differential Pay Law at page 3, as evidence of a decade of strong opposition and lobbying by Pentagon leaders to this Reservist differential benefit.

OPM policy and official guidance on what constitutes qualifying service under the Differential Pay statute has been incorporated as binding on federal pay offices throughout the Government.[2]

The same DoD that had taken the extraordinary step of publicly opposing this very law benefitting reservists prior to its passage were consulted, as statute required, in its interpretation and implementation.  After losing their decades-long lobbying campaign against the Reserves, it appears senior leaders in DoD were influential in persuading OPM to capriciously withhold the rightful differential pay benefit to a very large swath, the Putative Class, of federal employees who left the ease and comforts of federal civilian jobs to volunteer for wartime duty as activated

---

[2] *5 U.S.C. 5538, et. seq.* incorporates the Uniformed Services Employment and Reemployment Rights Act's (USERRA), 38 U.S.C. 4301 *et. seq.*, broad and comprehensive scope of coverage for the Federal Government that includes intelligence agencies and other often exempted entities.

reservists fighting (likely also dying and suffering debilitating injuries) in our nation's contingency operations over the past decade.

## NATURE OF THE CASE

1.      This class action is brought on behalf of all current and former employees of the federal Government who, at any time after January 28, 2009, were called or ordered to active duty in support of a contingency operation under the authority of 10 U.S.C. 12301(d), meaning they volunteered to fill a critical active duty manning shortfall, and were otherwise qualified for the Differential Pay benefit, 5 U.S.C. 5538 *et*. *al*., but were denied by the Government because they were volunteers.[3]

2.      Pursuant to the Government's unlawful application and implementation of the Differential Pay Law, thousands, if not tens of thousands, of veterans were refused consideration based on the arbitrary, capricious, possibly prejudicial, and certainly incorrect basis that they had volunteered.  The Putative Class were those federal civilian employees who, after 28 January 2009, served on active duty pursuant to 10 U.S.C. 12301(d) which allows DoD to activate a reservist for a critical deployment position if the servicemember agrees to waive substantive rights protecting individual reservists from being inappropriately singled out for wartime deployment.  For the most part, reservists are only activated as part of an entire unit mobilization, not individually.  There are rarely used authorities to allow for individual involuntary mobilization, however, this is not the norm nor often utilized.  As a result, DoD

---

[3] This differential pay benefit only applies in cases where military pay and allowances are less than the civilian base pay.

heavily relies upon volunteering reservists to fill thousands of mobilization shortfalls during wartime. *See* Exhibit C at page 3, pegging the number of federal civilian employees service in the Reserves at any given time at 120,000. These statutory limitations serve to protect individual reservists from being singularly targeted absent a very narrow and quantifiable set of needs-based justifications. The military personnel in the Putative Class could have likely avoided wartime service altogether had they not volunteered.[4]

3.       Multiple adjudicative bodies and tribunals, when not constrained by OPM's policy and legal interpretation precedent, have agreed with Plaintiff in this matter and have awarded relief limited to the individual plaintiffs in those few cases only. *See* Exhibit B. This claim seeks to rectify this longstanding injustice to thousands of other servicemembers who have been unlawfully deprived based on this clearly erroneous interpretation and application of law.[5]

4.       Background: Legislative history demonstrates Congress wanted to provide a differential pay benefit comparable to what Fortune 500, even many foreign employers, and smaller American firms has been providing for years to reservists activated during wartime. *See* Exhibit D. Most telling in that comparison is that there is no evidence that any private employer

---

[4] It is worth noting for context that these volunteers almost always did not know a single person with whom they would go to war until the first day of their mobilization.

[5] Interestingly, the only one publicly available contrarian view on this issue was penned by the current General Counsel of OPM, while he sat as a Board Member on the MSPB, in a split decision resulting in the confirmation of the ruling found at Exhibit B since a majority of the MSPB would have been required to overturn it. A legitimate question arises whether a conflict of interest is presented should that former MSPB Board Member participate in this litigation for the Government as it so directly relates to, and professionally reflects upon, his published decision while at that independent body. The appearance of a conflict is certainly at play raising the issue of whether recusal is appropriate. This may be the subject of a motion at a later time should a voluntary recusal not be forthcoming.

even hints at making any distinction for providing a differential pay benefit based on whether or not the civilian employee reservist volunteered for active wartime duty.  In fact, it is a fair and likely persuasive argument that any such distinction could almost certainly be a violation of the Uniformed Services Employment and Reemployment Rights Act (hereinafter "USERRA") given that law's prohibition on any form of employment discrimination against servicemembers based on service regardless of whether it was voluntary or compelled.[6]

5.      Therefore, it is fair to conclude that Congress, having overwhelmingly passed USERRA's discrimination provision, would have been loath to pass such a blatant contradiction and repudiation of that USERRA prohibition in the Differential Pay Law.

6.      Plaintiffs and the Class seek damages, costs, and reasonable attorneys fees.

## JURISDICTION AND VENUE

7.      Venue and jurisdiction are proper in this Court pursuant to 28 U.S.C. § 1331, § 1367, and 28 U.S.C. Section 2201 pursuant to a Declaratory Judgment of this Court.

8.      This Court has expertise and jurisdiction over all aspects of federal law implicated unlike the other variable adjudicative bodies that could invoke jurisdiction over one or another aspect of it.

9.      To refuse jurisdiction would rupture the potential claims in this matter into various splinters of incomplete and disparate legal effect.  For instance: (a) certain Title 5

---

[6] 38 U.S.C. 4311 (a): "**(a)** A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied…any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation."

federal Executive Branch employees would have to take the USERRA aspects of this claim to the Merit System Protection Board (MSPB) currently sitting impotent without a valid quorum and no apparent end in sight to the political deadlock; (b) while certain members of the Putative Class working in Executive Branch Intelligence Community federal civilian positions would be barred from this venue and instead have to bring those matters to the U.S. Court of Federal Claims or not at all; (c) Legislative and Judicial Branch employees would have to bring USERRA claims in the various U.S. District Courts across the nation depending on where they reside and/or work, or possibly the Comptroller's Office; (d) certain back pay money-mandating claims of federal employees could be brought in the U.S. District Court for the jurisdiction in which they reside and/or work (i.e. Little Tucker Act); (e) or they could file their claims in the U.S. Court of Federal Claims; (f) and, lastly, but by no means the least significant, reservists denied this employment benefit through no fault of their own whose qualifying military service was between January 2009 and August 2013 would be barred by the six year procedural statute of limitations of the U.S. Court of Federal Claims and arbitrarily denied relief.

10.     Thus, this Court with its plenary declaratory, equitable, and other means of relief is uniquely positioned to hear and act on this case, particularly when considering the profound judicial economy issues and other compelling implications in the interest of justice that it presents.  This Court's broad jurisdictional reach and expertise is singularly able to hear and rule on this case in a manner that will universally cut through the jumble of cross-jurisdictional, half-measures, and overlapping jurisdiction in a way that resolves it in one effective and comprehensive hearing.

11.     Thus far, multiple and disparate venues have been asked to adjudicate similar individual claims from the MSPB to the Comptroller, to OPM's internal administrative appeals body, possibly others.  This Court's expertise and particular charge over the Government's varied and widespread departments and agencies presents the only valid option for efficient and comprehensive resolution.

## PARTIES

12.     Plaintiff John Kluge is a resident of Fairfax, Virginia and was formerly a federal civilian employee at the U.S. Department of Homeland Security.  He is also a Commissioned Officer in the United States Army Reserves.  In 2008 and 2009, Plaintiff was mobilized by the Army pursuant to an order to Active Duty under 10 U.S.C. 1301(d).  He volunteered for wartime duty. As such, he should have received differential pay, as his civilian compensation was more than his military compensation during this period.  Plaintiff was deprived of such differential pay due to the arbitrary and capricious interpretation and application of the Differential Pay Statute 38 U.S.C. 2308 as interpreted by the OPM.

13.     Defendant is the United States of America (the "Government"), a sovereign. Defendant is responsible for the actions of its various departments, agencies, and offices, such as OPM and DHS. OPM is an executive branch office and DHS is an executive department.

## COUNT I

**Defendant has Harmed Plaintiff and the Class Based on an Erroneous Interpretation and Implementation of 5 U.S.C. 5538 *et. al.* Resulting in the Unlawful Denial of Differential Pay**

**to Otherwise Qualifying Reservists Called or Ordered to Active Duty Pursuant to 10 U.S.C.**

**12301(d)**

34.     Plaintiff hereby incorporates by reference all paragraphs and citations as set forth herein.

35.     Pursuant to federal statute, Plaintiff and the Class were entitled to differential pay benefits under 5 U.S.C. 5538 but were denied such benefits by Defendant.

36.     Defendant's interpretation and policy on which they base their denial to Plaintiff and the Class is legally wrong and inconsistent with the plain meaning and the basic principles of federal statutory construction.

## FACTUAL ALLEGATIONS

14.     For nearly ten years now, OPM and all Federal civilian employers have been unlawfully denying their civilian employees who serve in the military reserves this differential pay if they volunteered for active duty service in support of military Contingency Operations such as the war in Iraq, Afghanistan, or Syria.  This decision was based on the Obama-era OPM's arbitrary and capricious Guidance and implementation of 5 U.S.C. 5538 that read into the law a phantom exclusion for such volunteers.  Allowing individuals to volunteer for wartime service under 10 U.S.C. 12301(d) is a well-established and common practice by DoD to provide servicemembers the ability to better plan and organize wartime deployments to minimize disruptions to their civilian and family lives but also gives DoD much-needed flexibility to individually augment military mobilizations and active duty critical shortfalls.

15.     OPM has completely disregarded critical language in the statute and the overall

context and purpose of the Differential Pay Law's plain meaning as passed by Congress and

signed by the President.  OPM's official Guidelines on their website reads:

> "***Qualifying active duty*** *means active duty by a covered employee pursuant to a call or*
>
> *order, as described in section 5538(a). (See Part 1 of Appendix D.) (Note: Under section*
>
> *5538(a), active duty that qualifies for coverage under section 5538 is active duty under a*
>
> *provision of law referred to in 10 U.S.C. 101(a)(13)(B)—i.e., the following specific*
>
> *provisions in title 10 of the United States Code: sections 688, 12301(a), 12302, 12304,*
>
> *12304a, 12305, and 12406 and chapter 15 (which includes sections 331, 332, and 333).*
>
> ***Thus, qualifying active duty does not include voluntary active duty under 10 U.S.C.***
>
> ***12301(d) or annual training duty under 10 U.S.C. 10147 or 12301(b).),*** *Emphasis*
>
> *added*.  OPM Policy Guidance on Reservist Differential under 5 U.S.C. 5538. Original
>
> Issuance Date: December 8, 2009 Revision Date: June 23, 2015, OPM.[7]

16.     Yet the defining section a federal law cited in both the Differential Pay Law

above, and the FMLA provision cited previously, actually states the following:

> "*(13)* ***The term 'contingency operation' means*** *a military operation that is designated*
>
> *by the Secretary of Defense as an operation in which members of the armed forces are or may*
>
> *become involved in military actions, operations, or hostilities against an enemy of the United*

---

[7] OPM's Guidance is followed by all federal employers.

*States or against an opposing military force;* **or results in the call or order to, or retention on, active duty** *of members of the uniformed services under section 688, 12301(a), 12302, 12304, 12304a, 12305, or 12406 of this title, chapter 15 of this title, section 712 of title 14,* **or any other provision of law during a war or during a national emergency declared by the President** *or Congress*." 10 U.S.C. 101(a)(13), emphasis added.

17.    It defies explanation how OPM could view "voluntary active duty under 10 U.S.C. 12301(d)" in support of Contingency Operations as somehow out of the realm of the plain meaning of "qualifying service," particularly such service in the war zones of Iraq, Afghanistan, Syria, as defined by 10 U.S.C. 101(a)(13).

18.    The simple fact is that each successive President of the United States in bipartisan and continuous fashion has formally declared a national emergency based on the terrorist attacks of September 11, 2001 all the way up to the present day, Presidential Proclamation 7463. Furthermore, almost all contingency operations undertaken and authorized by the Department of Defense have been directly related to the Global War on Terrorism and Presidential declaration of national emergency in response to the attacks of September 11th: Global War on Terrorism, Operation Enduring Freedom (Afghanistan), Operation Iraqi Freedom, as well as more recent missions such as Operation Freedom's Sentinel and Operation Inherent Resolve in Iraq/Syria, among others.

19.    For years, Congress debated and eventually passed 5 U.S.C. 5538, a provision of law intended to provide military reserve personnel sacrificing in our Nation's conflicts with the

same benefits of employment found in differential pay being provided by many private sector employers.  None of these employers, nor Congress, made any distinction between voluntary and involuntary service.  In fact, reason would dictate that those volunteering would be afforded the benefit before those who were involuntarily deployed.  *See* Exhibits C and D for contemporaneous press reporting on the subject.

20.    As such a federal Differential Pay statute was signed into law on March 15, 2009, mandating Federal civilian differential pay for qualifying military service.

21.    OPM and federal bureaucracies have refused to give effect to this clear statutory benefit to those who volunteer. This is against both Congressional intent and the established cannons of statutory interpretation to give effect to all statutory language referenced in law.

22.    The specific clause in question surrounds a statutory definition of military "Contingency Operations" incorporated by reference in the Differential Pay Law.  It is clear that the drafters intended to both limit the Differential Pay Law to circumstances in which federal employees were absent from work pursuant to active duty service for Contingency Operations, normally cited on an individual's written Orders, and wanted to defer eligibility criteria to the existing statutory definition found in 10 U.S.C. 101 (a)(13).

23.    This section unambiguously cites several independent triggers that invoke the differential pay employment benefit; and also statutorily defines what is and is not a "Contingency Operation."  The plan meaning requires the differential pay to be afforded to service in support of Contingency Operations during a period of a Presidential declaration.

12

24.     Yet the Government has steadfastly stuck to its too narrow and unlawful

application of this law by somehow holding that the Differential Pay Law only applies to

contingency operation performed involuntarily.  This refusal fails to give effect to the words in

the statute "during periods of national emergency declared by the President or Congress"

rendering them superfluous. 10 U.S.C. 101(a)(13)(B).[8]

## CLASS ACTION ALLEGATIONS

25.     Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil

Procedure and this Court on behalf of himself and the following class:

**Class: All Federal civilian employees who, at any time after 28 January 2009,**
**performed active duty military service and met all other criteria for the differential**
**pay entitlement pursuant to 5 U.S.C. 5838 *et. al.,* but were not paid the differential**
**pay by their Federal civilian employer because they volunteered for active duty, so**
**were called or ordered to active duty pursuant to 10 U.S.C. 12301(d).**

26.     The Class includes, likely, tens of thousands of individuals, making joinder

impractical, in satisfaction of FRCP 23(a)(1).  The exact size of the Class and the identities of the

individual members thereof are ascertainable only through Defendant's records.

---

[8] *See* John R. Sands, et. al, v. United States, 552 U.S. 130 (2008):"A statute should be construed so that every word
has some operative effect. TRW, Inc. v. Andrews, 534 U.S. 19, 31 (2001), quoting United States v. Menasche, 348
U.S. 528, 538-39 (1955)."

27.     The claims of Plaintiff are typical of the claims of all of the other members of the Class.  The claims of the Plaintiff and the Class are based on the same legal theories and arise from the same erroneous conduct, resulting in the same injury to the Plaintiffs and the Class. The Class has a well-defined community of interest.  The Defendant has acted and failed to act on grounds generally applicable to the Plaintiff and the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class.

28.     There are questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual Class members within the meaning of FRCP 23(a)(2) and 23(b)(2).

29.     Common questions of fact and law affecting members of the Class include, but are not limited to, the following:

a.     Whether Defendant's conduct in barring consideration of employment benefits to otherwise qualified employees because they volunteered for wartime duty pursuant to 10 U.S.C. 12301(d) violated federal statute and/or regulations mandating the payment of differential pay to reservists called or ordered to active duty for a Contingency Operation under "any other provision of law" during a time of a Presidential declaration of national emergency;

b.     Whether Defendant was motivated in part by inappropriate factors or prejudice;

14

c.       Whether Plaintiffs and the Class are entitled to relief, including damages, interest, costs and/or attorney's fees.

30.     Plaintiff will fairly and adequately represent and protect the interests of the Class.

31.     Plaintiff has retained counsel with substantial experience in complex claims, as well as, substantial experience in military law and federal civilian employment law matters.  To deny the putative Class or representation and require individual claims would be prohibitive and will result in an ineffective and incomplete resolution of the issue.  The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

32.     Absent a class action, most class members would find the cost of litigating their litigation and class actions prohibitive.  Plaintiff and their counsel will zealously pursue the claims on behalf of the Class and have the resources to do so.  Plaintiff has no interest adverse to those of other Class members.

33.     Plaintiff's counsel does not have an interest adverse to those of other Class members but would likely qualify for differential pay for a period of active duty in support of Contingency Operations as an individual augmentee to a U.S. Special Operations Command, Joint Special Operations Task Force after the underlying statute went into effect.  Plaintiff is willing to disclaim this interest if the Court views it as somehow conflicting with the interests of other Class members.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, pray for the following relief:

A.     An order certifying the Class;

B.     An order appointing Plaintiff as representatives of the Class and Plaintiff's counsel as counsel for the Class;

C.     A declaratory judgment for Plaintiff and the Class on the question of law presented to the Court herein concerning their eligibility and entitlement to differential pay pursuant to 5 U.S.C. 5538; and all that the Court deems appropriate given its vast authorities including those at equity, in damages, and at law;

E.     Payment of Plaintiff's and the Class' costs and reasonable attorneys' fees; and any further relief the Court deems proper.

Dated: August 28, 2019                          Respectfully submitted,


_____/James Renne/_____

*James Renne, Esq.*
*The Military Law Project*
*4201 Wilson Blvd.*
*Suite 110521*
*Arlington, VA 22203*
*Counsel for Plaintiff and the Putative Class*

16